**NOT FOR PUBLICATION**                                              **CASE CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: <br><br> ASPECT COMPUTER CORPORATION, <br><br> Debtor. <br><br><br> BARRY W. FROST, Chapter 7 Trustee for Aspect Computer Corporation <br><br> Plaintiff, <br><br> v. <br><br> WALDER, HAYDEN & BROGAN, P.A. and MORRISON & COMPANY, P.A., <br><br> Defendants. | CIVIL ACTION NO. 09-5023 (JAP) <br><br><br><br><br> OPINION |

PISANO, District Judge.

   This fraudulent transfer action was brought by Barry Frost ("Trustee"), chapter 7 trustee of the bankruptcy estate of Aspect Computer Corporation ("Aspect"), against defendants Walder, Hayden & Brogan, P.A. ("WHB") and Morrison & Company, P.A. ("Morrison").  This Court granted WHB's Motion for Withdrawal of Reference to the Bankruptcy Court on November 4, 2009.  Presently before the Court are Motions for Summary Judgment by Defendants WHB and Morrison.  Plaintiff opposes both Motions.  The Court decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth herein, the Motions for Summary Judgment are GRANTED.

I.      **FACTUAL BACKGROUND**

The following facts are undisputed by the parties.[1] Jonathan Chu ("Chu") was, at all times relevant, the President, Chairman, and sole stockholder of Aspect Computer Corporation. He controlled every part of the company's operations and finances. In January and February of 2005, the United States Drug Enforcement Agency searched Aspect's offices in Somerset, NJ, seizing thousands of documents, and seized funds contained in 12 bank accounts owned by Chu, Aspect and related entities. Chu was also under investigation by the United States Attorney's Office for money laundering. On June 29, 2005, the United States filed a criminal complaint against Chu, arresting him on money laundering offenses and seeking forfeiture of money in accounts owned by Chu, Aspect, and related entities. On July 19, 2005, the United States filed a civil complaint for forfeiture of the seized funds. The criminal indictment filed against Chu on January 3, 2006 contained one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956, and one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371. The indictment sought forfeiture of $10,000,000, including the seized funds, and certain real property.

Chu, along with Fong Joe Hou, Aspect's corporate counsel and Chu's personal attorney, consulted with WHB. WHB's January 24, 2005 engagement letter was addressed to Chu in care of Hou, and listed WHB's standard hourly rates. John McDonald of McDonald & Rogers, LLC, was also retained by Aspect at WHB's suggestion. WHB retained Morrison's accounting services in connection with these matters. It is undisputed that WHB and Morrison charged standard fees for all of their services.

---

[1] All facts in this background statement can be found in the original Complaint filed by the Trustee, the Statement of Material Undisputed Facts submitted by WHB in support of the instant Motion ("WHB Statement of Facts"), and in the Responsive Statement to Material Facts submitted by the Trustee in support of its Brief in Opposition ("Trustee Responsive Facts").

On January 26, 2007, a jury rendered a guilty verdict against Chu and a co-defendant, Maggie Chen.  The criminal trial established that Chu used Aspect's accounts to launder over $2.8 million in money from South American drug trafficking.  Personal judgments were entered against Chu and Chen in the amount of $3,400,000.  In order to partially satisfy this personal judgment, Chu agreed to the forfeiture of the $1,806,568.62 of Aspect's funds that had been seized in the civil forfeiture action.  On June 11, 2007, the Trustee filed a claim in the civil forfeiture proceeding asserting his interest in these same funds.  Along with the parties and other claimants, the Trustee ultimately signed the Consent Judgment and Final Order of Forfeiture which, among other things, provided for the crediting of this amount against Chu's personal judgment.  On April 27, 2007, an involuntary Chapter 7 liquidation proceeding was commenced against Aspect.

On July 28, 2009, the Trustee filed a Complaint against WHB and Morrison for avoidance of the fees paid by Aspect for Chu's criminal defense pursuant to §§ 544, 548 and 550 of the Bankruptcy Code and N.J.S.A. §§ 25:2-20, *et. seq.*, alleging that these fees were fraudulent conveyances.  The Complaint alleged that WHB was retained solely by Chu in his personal capacity to defend against the criminal charges against him, not by Aspect in the civil forfeiture proceeding; and that Chu was not entitled to indemnification from Aspect for those criminal defense costs.  Thus, the Trustee alleged that Aspect did not receive reasonably equivalent value for the fees paid to WHB and Morrison, making these fees a fraudulent transfer under the Bankruptcy Code and New Jersey law.  At issue here are the Motions for Summary Judgment filed by Defendants WHB and Morrison.

## II.     SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether or not a fact is material is determined according to the substantive law at issue. *Anderson*, 477 U.S. at 248. If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. The non-moving party must then offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Its opposition must rest on "facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a

genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. LEGAL ANALYSIS

A trustee may avoid any transfer of the debtor's interest in property made within two years of the filing of a bankruptcy petition if the transfer was the result of actual or constructive fraud. 11 U.S.C. § 548. New Jersey's adaptation of the Uniform Fraudulent Transfer Act, N.J.S.A. §§ 25:2-20 to 34, also provides for avoidance of a fraudulent transfer. The burden rests on the party seeking to recover the transfer to prove that it was fraudulent by a preponderance of the evidence. *Pension Transfer Corp. v. Beneficiaries Under the Third Amendment (In re Fruehauf)*, 444 F.3d 203, 211 (3d Cir. 2006).

Here, no intentional fraud is alleged. The Trustee contends that the transfers were constructively fraudulent because the debtor received no value in exchange for the transfers, or, in the alternative, that it did not receive reasonably equivalent value. 11 U.S.C. § 548(a)(1)(B); N.J.S.A. § 25:2-25(b); N.J.S.A. § 25:2-27(a). If the Trustee cannot show that there was no reasonably equivalent value, the Court need not consider the remaining elements of the claim, *e.g.*, that the debtor was insolvent at the time the transfers were made. *Id.*

The analysis for determining whether the debtor received reasonably equivalent value is identical under the Bankruptcy Code and New Jersey law. *VFB, LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007). First, the Court must determine whether a debtor received any value. *In re Fruehauf*, 444 F.3d at 212 (citing *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L. (In re R.M.L.)*, 92 F.3d 139, 150 (3d Cir. 1996)). Value can include direct or indirect benefits. *Id.* Furthermore, "[t]he mere 'opportunity' to receive an

5

economic benefit in the future constitutes 'value.'" *Id.* (citing *In re R.M.L.*, 92 F.3d at 148). The transaction is reviewed "at the time the transfer was made." *In re R.M.L.*, 92 F.3d at 153 (citing *Allard v. Flamingo Hilton (In re Chomakos)*, 69 F.3d 769, 770-71 (6th Cir. 1995)). Thus, for example, the fact that Chu was ultimately convicted has no bearing on whether or not Aspect received value.

If any value was exchanged, then the Court moves to the Third Circuit's "totality of the circumstances" test in order to determine whether or not the value received by the debtor was reasonably equivalent to what the debtor paid. *In re Fruehauf*, 444 F.3d at 212-13 (citing *In re R.M.L.*, 92 F.3d at 148-49, 153). This test determines "(1) the 'fair market value' of the benefit received as a result of the transfer, (2) 'the existence of an arm's-length relationship between the debtor and the transferee,' and (3) the transferee's good faith." *Id.*

### A. The Trustee Raises No Genuine Dispute Over the Material Facts Asserted by the Movant.

In an effort to bypass summary judgment, the Trustee claims to dispute some of the facts asserted by WHB. These "disputes" relate to whether or not Chu and Aspect shared an identity of interest, and whether WHB's legal services were rendered only to Chu in his personal capacity, or to both Chu and Aspect. These factual issues are relevant to the Trustee's claim that there was no reasonably equivalent value. They establish, respectively, whether or not the fees paid for Chu's criminal defense conferred any benefit on Aspect, and whether or not any of WHB's services were rendered directly for the benefit of Aspect. The Trustee ultimately fails to dispute any facts, but merely disputes WHB's characterization of those facts.

A debtor can receive reasonably equivalent value for a transfer made on behalf of a third party where the debtor and the third party share an identity of interest. *In re R.M.L. Inc.*, 195 B.R. 602, 618 (Bankr. M.D. Pa. 1996) (citing *In re Pembroke Development Corp.,* 124 B.R. 398,

6

400 (Bankr. S.D. Fla. 1991); *Glassman v. Heimbach, Spitko & Heckman (In re Spitko)*, No. 05-0258, 2007 WL 1720242, at *48-49 (Bankr. E.D. Pa. June 11, 2007). The Trustee raises trivial objections to the facts asserted by WHB in an attempt to demonstrate a dispute as to whether Chu and Aspect shared an identity of interest, and similarly as to whether the related proceedings against each were separable. For example, the Trustee cites a "more precise" description of the seized bank accounts in order to dispute WHB's assertion that the seized funds were "Aspect's cash." Trustee Responsive Facts ¶ 17, 19 (citing Criminal Complaint). But the cited document states that the money seized had been deposited in and freely transferred between accounts under Aspect's name, under Chu's name, and under the names of other companies which were either aliases of Aspect or companies also owned by Chu. These transfers of funds comprise the money laundering that Chu was charged with. Thus, the Trustee has failed to refute the fact that the criminal indictment against Chu sought Aspect's funds. In fact, the Trustee ultimately signed the Consent Judgment and Final Order of Forfeiture without objecting to the provision crediting Aspect's forfeited funds against Chu's personal criminal judgment. The Trustee asserts that he did not object because the funds "were made available to classes of claims of Aspect's creditors." Trustee Responsive Facts ¶ 16. However, this statement does not create a factual dispute as to either the Trustee's signature on the Consent Judgment or as to the interchangeable nature of Chu's and Aspect's funds.

The Trustee also disputes WHB's statement that the two proceedings arose from the same facts, noting that this cannot be established as fact by the document cited by WHB. Trustee Responsive Statement ¶ 18. The cited document is a letter from Assistant United States Attorney Gaeta seeking a stay of the civil proceeding pending resolution of the criminal proceeding. The probative value of the letter is immaterial; the fact that the civil and criminal proceedings arose

7

from the same acts is corroborated by every undisputed fact, and the Trustee can point to no facts suggesting the contrary. The Trustee's original Complaint even notes that Chu's criminal trial established that he used Aspect as a vehicle for his money laundering scheme.

The Trustee's argument that Chu's penal interest may have been at odds with his interest as the Director, President, and sole shareholder of Aspect is also unavailing. There is no question that Chu used Aspect, the company over which he had utter control, as a vehicle for his money laundering scheme, and that the exact same funds were subject to forfeiture in both the civil and the criminal proceedings. The Trustee makes much of WHB's failure to oppose the government's motion to stay the civil proceeding pending the resolution of the criminal indictment, as evidence that Chu's penal interest was adverse to Aspect's financial interests. In view of the undisputed facts, is absurd to suggest that the two proceedings could have been viewed independently, and the evidence is overwhelming that all parties to both proceedings viewed them as intertwined. It is often desirable to stay civil forfeiture proceedings pending the resolution of related criminal cases, *see, e.g.*, *Gmach Shefa Chaim v. United States*, 692 F. Supp. 2d. 461, 474 (D.N.J. 2010), and the government advised WHB that it would have moved for such a stay in its own right, pursuant to 18 U.S.C. § 981(g)(1), if Chu did not consent. The suggestion that Aspect could have achieved a better outcome if only it had opposed the government's motion to stay the civil proceeding is baseless.

Finally, the Trustee asserts that all of WHB's services were directed primarily towards defending Chu against criminal charges, and that WHB only represented Chu in his personal capacity and did not represent Aspect. WHB, however, contends that it was the lead counsel in both the criminal and civil forfeiture proceedings against Chu and Aspect, with Hou and

8

McDonald taking limited roles, subordinate to WHB's "global strategy." WHB Statement of Facts ¶ 8. The undisputed facts support WHB's characterization.

The Trustee disputes that there was a need for a global strategy or for McDonald & Rogers to assume a limited role, because McDonald & Rogers was competent to represent Aspect. Trustee Responsive Facts ¶ 8, 10. The necessity of WHB's lead role and global strategy has no bearing on whether or not they existed in fact. The Trustee also argues that Hou's name on WHB's engagement papers and his presence at their meetings is not indicative of WHB's representation of Aspect, because Hou was also Chu's personal attorney. Trustee Responsive Facts ¶ 7. The fact that Hou was both Aspect's corporate counsel and Chu's personal attorney, however, is yet another fact supporting the complete identity of interest.

On the other hand, the Trustee admits that at least "some" of WHB's legal work "was aimed at securing the release of Aspect's forfeited funds." Trustee Responsive Facts ¶ 12, 15. It also failed to dispute the facts supporting WHB's characterization. For example, when Aspect moved to have its seized funds returned pending the outcome of the civil forfeiture case, the motion was written entirely by an attorney from WHB. Trustee Responsive Facts ¶ 15. WHB also moved in the criminal proceeding for the return of those seized funds that had been wired to Aspect's accounts by the company's customers after the alleged criminal conduct had ended. Later, at an important moment in the civil proceeding, the Forfeiture Stay Consent Judgment was signed only by the Government, WHB and Chu; not by Aspect or McDonald. Trustee Responsive Statement ¶ 24. The Trustee's assertion that WHB primarily represented Chu in a personal capacity defending against his criminal charges and did not have a meaningful role in the defense of Aspect is, therefore, not supported by the facts.

Chu's and Aspect's funds were inextricably comingled for the same reason that the civil and criminal proceedings were completely intertwined: Chu and Aspect shared a complete identity of interest and Chu used Aspect as a vehicle for money laundering.  Thus, the legal defenses of Chu and Aspect were interdependent, and WHB was reasonable in treating them so.  The Trustee has failed to show the lack of reasonably equivalent value on the basis that Aspect did not stand to benefit from the criminal defense of Chu.  Neither has the Trustee shown that this was the full extent of WHB's services; the undisputed facts show that WHB rendered important services directly to Aspect.

### B.  The Trustee Raises Factual Disputes That Are Immaterial.

The Trustee raises three factual disputes that he incorrectly contends could affect a jury's assessment of reasonably equivalent value.  First, he argues that Aspect received no value for the transfers because they were illegal under New Jersey corporate law.  Specifically, the Trustee alleges that Aspect and Chu failed to go through the proper procedure for corporate indemnification of an officer's personal legal fees as provided by N.J.S.A. § 14A:3-5, and that Chu was not ultimately entitled to that indemnification because he knew that his conduct was unlawful and he violated his fiduciary duty to Aspect's creditors.  N.J.SA. § 14A:3-5(2).  The Trustee notes that New Jersey law provides separate procedures for public and closely-held corporations, and cites to the affidavits of WHB counsel stating that they were unaware of the procedures applicable to closely-held corporations such as Aspect.  The Trustee contends that this failure to follow the law in expending Aspect's funds for Chu's defense could allow a jury to find that, under the "totality of the circumstances" test, Aspect did not receive reasonably equivalent value.  WHB does not rebut the additional facts asserted regarding the New Jersey

10

law of corporate indemnification, arguing instead that they are irrelevant to whether or not the company received value.

Even an illegal transfer can be made in exchange for fair market value and at arm's length, so presumably any illegality would only go to the "transferee's good faith" prong of the test. *In re Fruehauf*, 444 F.3d at 212-13 (citing *In re R.M.L.*, 92 F.3d at 148-49, 153). However, as detailed above, there is no rational way to disentangle either the funds or the legal defenses of Chu and of his company. Leaving aside the question of whether or not any of the fees can even be categorized as indemnity under such circumstances, there is no question that WHB acted in good faith for purposes of the reasonably equivalent value test: it reasonably believed it was providing value to Aspect in exchange for the standard fees it charged.

Second, the Trustee argues that Aspect did not receive reasonably equivalent value for WHB and Morrison's services because Aspect's imminent bankruptcy and termination of operations was already apparent at the time those services were retained. Thus, he argues, WHB's efforts could not have reasonably been directed towards Aspect's continued economic viability, and Aspect had nothing to gain from expending its own funds to defend against Chu's criminal charges. WHB, however, contends that its efforts on Chu's behalf in the criminal proceedings were directed toward preserving both Aspect's value and its ability to operate.

This dispute is immaterial, because WHB's legal services were valuable to Aspect whether or not Chu's acquittal would have allowed Aspect to continue operating. This is because insolvent companies may benefit from services aimed at preserving their value. WHB rendered some of its legal services directly to Aspect, and its work in Chu's criminal defense was directly related to the preservation of Aspect's value. The funds that would have been available to Aspect's creditors in the event of a bankruptcy were vulnerable to both the civil and criminal

11

proceedings.  In fact, far more money was sought in the criminal indictment than was subject to civil forfeiture.  Thus, success in the criminal case would have directly preserved some of Aspect's value.  Furthermore, because the proceedings arose from the same facts, it was reasonable for WHB to believe that success in Chu's criminal defense was critical to success in Aspect's civil case, thus indirectly preserving Aspect's value.   Under these circumstances, the Trustee is incorrect that "[s]pending more than $1.7 million in a speculative gambit to recover $1.8 million of seized funds and obtain the acquittal of the very man who, through his own actions, drove the company into ruin, is objectively not reasonable." Pl.'s Sur Reply 1.

Finally, the parties' dispute over burden shifting in quantifying value is also irrelevant.  The Trustee claims that WHB has not met its burden of production because it has failed to adequately quantify the value its legal services conferred on Aspect.  *See In re Fruehauf*, 444 F.3d at 214 (describing the standard for quantification of the value of an intangible benefit).  WHB characterizes this argument as a claim that the burden of persuasion shifts to the defendant, noting that the burden of persuasion never shifts in a fraudulent transfer case.  *Id.* At 217 (citing *Braunstein v. Walsh (In re Rowanoak Corp.)*, 344 F.3d 126, 131-32 (1st Cir. 2003)).  The Trustee is correct in its distinction between the burden of production and the burden of persuasion, but it is incorrect to assert that WHB has not sufficiently quantified the value of its services.  Legal services have an ascertainable market value, and there is no dispute as to the fact that WHB and Morrison charged a reasonable amount for the work that it performed.  Because these services, as described above, conferred a direct benefit on Aspect, there is nothing intangible about the benefit that need be quantified.  Outcomes of legal proceedings are always unknown at the time legal services are rendered, and in that sense the benefits of an attorney's work are always intangible.  The Trustee has not contended that WHB or Morrison performed

12

extraneous legal work in bad faith, and indeed it has no basis for such a contention.  No further precision in quantifying value can be required of WHB or of Morrison.

## IV.     CONCLUSION

For the foregoing reasons, the Plaintiff has failed to demonstrate any genuine dispute of material fact about the issue of reasonably equivalent value.  The undisputed facts demonstrate that Defendants WHB and Morrison provided reasonably equivalent value to the Debtor Aspect in exchange for the fees they were paid by that company.  A lack of reasonably equivalent value being essential to the Trustee's fraudulent transfer claim, the claim must fail as a matter of law.  WHB and Morrison's Motions for Summary Judgment are, therefore, GRANTED.  An appropriate order follows.

/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated: September 29, 2011